## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHELLE A. M.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   **CIVIL ACTION** |
| **v.** | ) |
| | )   **No. 20-1186-JWL** |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of Dr. Sankoorikal's medical opinion, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on February 13, 2018.  (R. 12, 226).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in considering the opinions of her physician, Dr. Sankoorikal.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.   Evaluation of the Medical Source Opinions

Plaintiff claims the ALJ erred in finding Dr. Sankoorikal's opinion is not supported by or consistent with the record.  (Pl. Br. 16).  Plaintiff acknowledges the regulations in effect when her case was filed required the ALJ to consider five factors (of which the most important are supportability and consistency) when considering medical opinions and prior administrative medical findings, to articulate how persuasive he finds the opinions (collectively) of each source, and to explain how he considered the factors of supportability and consistency.  Id. (citing 20 C.F.R. §§ 404.1520c, 416.920c).  Plaintiff acknowledges the ALJ properly applied the regulatory framework, but argues, "substantial evidence does not support the ALJ's rationale."  Id. at 17.  This is so, in Plaintiff's view, because "A reasonable mind would not accept the ALJ's rationale as

4

sufficient to support his ultimate conclusion." (Pl. Br. 17). Plaintiff argues the record "is consistent with and supports Dr. Sankoorikal's opinion." Id. She argues that the daily activities relied upon by the ALJ are not "inconsistent with Dr. Sankoorikal's opinion for being off-task 20% of the day, absent twice a month, or requiring unscheduled breaks every two to four hours." Id. at 18 (citing Pennington v. Chater, 1997 WL 297684, at *4 (10th Cir. 1997); and Otte v. Berryhill, No. 18-2006-JWL, 2018 WL 5263515, at *4-5 (D. Kan. Oct. 23, 2018) (finding remand necessary when the ALJ failed to explain specifically why he found the claimant's Ménière's disease attacks would not cause her to miss work one to two days a month on an ongoing basis)). This is so, in Plaintiff's view, because "nothing in the record indicated [Plaintiff] could not perform these activities for 80% of the day all but two days per month." Id. Plaintiff argues that her "complete statements of daily activities are consistent with and support Dr. Sankoorikal's opinion for off-task behavior, unscheduled breaks, and absenteeism." Id. at 19.

Plaintiff argues the ALJ's consideration of the evidence and his finding that sometimes Plaintiff had normal examinations and at other times she presented with abnormalities "is consistent with and supports Dr. Sankoorikal's opinion." Id. She argues "the medical record summarized by the ALJ support [sic] Dr. Sankoorikal's opinion." Id. Plaintiff asserts the ALJ found the prior administrative medical findings of the state agency consultants unpersuasive and argues they are stale because of material changes in Plaintiff's medical condition and, therefore, do not constitute substantial evidence inconsistent with or detracting from Dr. Sankoorikal's opinion. Id. at 20. She argues that the ALJ failed to provide reasons supported by substantial evidence

demonstrating Dr. Sankoorikal's opinion is unpersuasive and that in such a case remand is required.  (Pl. Br. 20).  Plaintiff concludes, "A reasonable mind would not find substantial evidence supported the ALJ's reasons for finding portions of Dr. Sankoorikal's opinion unpersuasive."  Id.

The Commissioner argues that the ALJ's finding Dr. Sankoorikal's opinion only partially persuasive is supported by the ALJ's citations to evidence in his decision. (Comm'r Br. 5).  He argues the ALJ is entitled to consider the prior administrative medical findings of the state agency medical consultants and he "does not commit reversible error by tempering the extremes of [the state agency consultants'] medical opinion for the claimant's benefit."  Id. at 8.  He notes Plaintiff's argument Dr. Sankoorikal's opinion is consistent with the record evidence and argues, "The issue, however, is not whether Plaintiff's position could be found supported by substantial evidence, but whether the ALJ's decision is so supported."  Id. at 9.

In her Reply Brief, Plaintiff argues "the ALJ found the prior administrative [medical] findings to be unpersuasive because they were inconsistent with and unsupported by the record as a whole," and as such they "did not constitute probative evidence sufficient to discount Dr. Sankoorikal's opinion."  (Reply 2).  Plaintiff acknowledges Dr. Sankoorikal considered Plaintiff's reports of pain in formulating his opinion of functional limitations but argues that factor does not justify discounting the physician's opinion because the record "contains significant objective findings documenting the basis for [Plaintiff]'s chronic pain."  Id. at 3 (citing evidence showing: grade 1 anterolisthesis of L4-L5 with marked degenerative changes resulting in central

6

spinal and neural foraminal stenosis; spondylolisthesis at L4-L5 with S1 radiculopathy

and mild stenosis at L4-L5; mild chronic L5 radiculopathy; degenerative disc disease at

C5-6 with mild to moderate bilateral neural foraminal stenosis; mild narrowing of the left

femoral acetabular joint and subtle osteophyte formation over the femoral head neck

junctions suggestive of impingement; mild multilevel disc bulging; and circumferential

disc bulging at L4-L5 causing probable mild spinal canal stenosis and at least moderate

bilateral neural foraminal narrowing).  Finally, Plaintiff argues the ALJ erred in relying

on her daily activities to discount Dr. Sankoolrikal's opinion because he failed to

consider Plaintiff's stated limitations in performing those activities.

### A.    Standard for Evaluating Medical Opinions

As Plaintiff recognizes, the Commissioner promulgated new regulations for

considering medical opinions and included a new section entitled "How we consider and

articulate medical opinions and prior administrative medical findings for claims filed on

or after March 27, 2017."  20 C.F.R. §§ 404.1520c, 416.920c (2017).  The regulations

provide that the Commissioner "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from your medical sources."  20 C.F.R. §§ 404.1520c(a),

416.920c(a) (2017).  The regulations provide that the SSA will consider each medical

source's opinions using five factors, supportability, consistency, relationship of source to

claimant, specialization, and other factors tending to support or contradict a medical

opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(a)(c)(1-5),

416.920c(a)(c)(1-5) (2017).  They provide that the most important factors in evaluating

persuasiveness are supportability and consistency.  Id.

     The regulations explain that the Commissioner's decision will articulate how

persuasive the SSA finds all medical opinions and prior administrative medical findings.

20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017).  The articulation requirement applies for

each source, but not for each opinion of that source separately.  20 C.F.R.

§§ 404.1520c(b)(1), 416.920c(b)(1) (2017).  It requires that the SSA "will explain how

we considered the supportability and consistency factors for a medical source's medical

opinions or prior administrative medical findings in your determination or decision.  We

may, but are not required to, explain how we considered the factors in paragraphs (c)(3)

through (c)(5) of this section, as appropriate, when we articulate how we consider

medical opinions and prior administrative medical findings in your case record."  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2017).  The regulations explain that when the

decision-maker finds two or more medical opinions or prior administrative medical

findings are equal in supportability and consistency "but are not exactly the same," the

decision will articulate the other most persuasive factors from paragraphs (c)(3) through

(c)(5).  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017).  Finally, the regulations

explain that the SSA is not required to articulate how it considered evidence from non-

medical sources.  20 C.F.R. §§ 404.1520c(d), 416.920c(d) (2017).

    **B.**     **The ALJ's Findings**

     The ALJ assessed Plaintiff with the RFC

to perform sedentary work as defined in 20 CFR 404.1567(a) and
416.967(a), in that she can lift and carry up to ten pounds occasionally and
lift or carry less than ten pounds frequently, stand and/or walk for two
hours out of an eight-hour workday, and sit for six hours out of an eight-
hour workday.  The claimant should be allowed to sit, stand or walk
alternatively, provided that they [sic] are off task less than 10% of the work
period.  The claimant should never climb ladders, ropes and scaffolds,
crouch, kneel and crawl; and can occasionally climb ramps and stairs,
balance, and stoop.  The claimant can occasionally use foot controls
bilaterally.  The claimant should never work at unprotected heights or with
moving mechanical parts; and can occasionally work in vibration and
extreme cold.  The claimant is able to carry out detailed but uninvolved
instructions in the performance of simple, routine and repetitive tasks in a
work environment with no fast paced production requirements involving
simple work-related decisions, and with only occasional judgment and
work place changes.  The claimant can occasionally respond to and have
interaction with supervisors, coworkers, and the general public.

(R. 18-19) (finding no. 5) (bold omitted).

The ALJ explained his consideration and evaluation of the opinions of six health

care providers—two state agency psychological consultants,[2] two state agency medical

consultants, Dr. Sankoorikal, and Ms. Sexton, Plaintiff's social worker.  (R. 22-23).  The

ALJ found the opinions of the psychological consultants "only partially persuasive"

because the record supports finding, in addition to the limitations opined by them, that

Plaintiff also has moderate limitations in understanding and adaptation.  Id. at 22.  He

found the opinions of the state agency medical consultants "have little persuasiveness"

because the record evidence supports "a reduction to sedentary [exertion] due to

---

[2] The ALJ referred to these consultants as "psychiatric physicians" (R. 22) but the court
notes that the record reveals they are psychologists, not psychiatrists.  (e.g., R. 99, 138).
Nonetheless, they are "acceptable medical sources" within the meaning of the
regulations.  Moreover, Plaintiff does not allege error in the ALJ's use of this term and
the court notes the consultants are qualified to provide opinions regarding mental abilities
and limitations in the prior administrative medical findings evaluated by the ALJ.

degenerative disc disease and hip impairments [and] a finding that the claimant can never climb ladders, ropes and scaffolds, crouch and crawl, as well as never work in hazards." (R. 22). He found Ms. Sexton's opinion "only partially persuasive" because although the record showed Plaintiff is limited by severe psychological impairments, the marked and extreme limitations opined by Ms. Sexton are not supported by or consistent with Plaintiff's testimony of activities, interactions with friends, or statements that medications were helpful, and because Ms. Sexton is not an "acceptable medical source within the meaning of the regulations. Id. at 23. The ALJ explained his consideration of Dr. Sankoorikal's opinion and why he found it "only partially persuasive." Id.

> The claimant's physician Joseph Sankoorikal indicated the that [sic] claimant could lift 10 pounds but rarely 20, sit 4-6 hours and stand 2 and noted never/rare for all postural [limitations] (Exhibits 3F/9F/10F). The physician also remarked that [t]he claimant would require unscheduled breaks, be absent 2 day[s a month] and off task 20% [of the time]. While the medical record does support a finding that the claimant is restricted to lifting 10 pounds, standing and walking for 2 hours in an 8-hour workday, and sitting for 6 hours, his opinion that the claimant needs unscheduled breaks, would be off task 20% of the time and absent 2 days a month are not supported by the record including the testimony of the claimant that she was the primary caregiver for her young daughter, that she took her child to school and appointments and performed various activities including driving, vacuuming, sweeping, laundry, cooking, and shopping. The claimant also testified that she did embroidery/beading crafts with hopes to sell the products. Therefore, I find the opinions only partially persuasive.

(R. 22-23). The ALJ also noted that although Plaintiff claimed at the hearing she had used a cane for over 6 months, a recent medical record revealed she was not using an assistive device, and "Dr. Sankoorikal opined that the claimant did not need the cane." Id. at 23 (citing R. 908-10, 915 ("Ambulates with a normal gait. Able to heel and toe walk without difficulty.")).

**C.**     **Analysis**

Plaintiff acknowledges the ALJ properly applied the regulatory framework, so the only question remaining is whether the ALJ's factual findings are supported by substantial record evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). <u>Perales</u>, 402 U.S. at 401.  Plaintiff's argument, "A reasonable mind would not accept the ALJ's rationale as sufficient to support his ultimate conclusion" (Pl. Br. 17) is little more than an ad hominem assertion that the ALJ's rationale is not reasonable—(because you disagree with the conclusion I reached, you are not reasonable)—and says nothing whether the ALJ's findings are supported by the type of record evidence a reasonable mind might accept to support a conclusion.  As noted above, to overturn the ALJ's findings of fact Plaintiff must show "that the evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it."  <u>Elias-Zacarias</u>, 502 U.S. at 481, n.1 (emphases in original).  In other words, Plaintiff must show the decision is merely a conclusion in the guise of findings—the evidence relied upon (or perhaps, that ignored) <u>compels</u> a different conclusion.  The starting point in the court's review is the findings presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence, and if those findings are supported by substantial evidence, that is also the ending point.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Thus, the court's review begins with the ALJ's evaluation of the medical opinions and prior administrative medical findings as summarized above.  Although Plaintiff's

argument is concerned primarily with Dr. Sankoorikal's opinion, that opinion was evaluated in the context of an evaluation of the record evidence including all the medical opinions and prior administrative medical findings.  Moreover, to the extent Plaintiff's focus on Dr. Sankoorikal's opinion rests on his position as Plaintiff's own medical source, the court reminds Plaintiff that under the new regulations the treating physician rule was abolished and the new regulations "focus more on the content of medical opinions and less on weighing treating relationships against each other."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added).  This court also tends to agree with the Commissioner's explanation that in many cases

> Courts reviewing claims under [the old] rules have focused more on whether [the agency] sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.  As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be [a] highly deferential standard to us.

Id., 82 Fed. Reg. at 5,853.

As quoted above, the ALJ discounted Dr. Sankoorikal's opinions that the claimant needs unscheduled breaks, would be off task 20% of the time and absent 2 days a month because they are not supported by the record and by Plaintiff's testimony.  (R. 23).  As the ALJ's reasons suggest, there is nothing in Dr. Sankoorikal's treatment records discussing a need for additional breaks, excessive off task behaviors, or missing work two days a month.  (R. 367-83).  As the Commissioner pointed out in his response, Dr.

Sankoorikal specifically noted in his opinion, "Pain is the limiting factor." (R. 569, 910). However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [including pain] are not entirely consistent with the medical evidence and other evidence in the record," and Plaintiff makes no argument of error in that finding. (R. 19). The ALJ also noted Plaintiff's testimony of activities as the primary caregiver for her young (special needs) daughter, driving, vacuuming, sweeping, laundry, cooking, and shopping. Id. at 23, see also (R. 402) ("Her daughter has anxiety and [is] developmentally delayed.") (emphasis omitted). Finally, the ALJ noted Plaintiff "testified that she did embroidery/beading crafts with hopes to sell the products," thereby indicating a belief she is not as limited as she alleges. Id.

This is evidence in the record upon which the ALJ relied in finding Dr. Sankoorikal's opinion "only partially persuasive." Id. It is precisely the type of relevant evidence "a reasonable mind might accept as adequate to support a conclusion;" Perales, 402 U.S. at 401; in this case, the conclusion that Dr. Sankoorikal's opinion is "only partially persuasive." (R. 23). The court is aware that different, reasonable, individuals afford different levels of weight to different facts, or factors, but that does not make the conclusion one reaches unreasonable. The court does not hereby imply that the conclusion reached by Plaintiff, and explained in his Brief is unreasonable. Rather, as both the Tenth Circuit and the Supreme Court have recognized, two inconsistent conclusions may be drawn from the same evidence. Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966); Lax, 489 F.3d at 1084. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's

findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084; see also, Consolo, 383 U.S. at 620.

It is the ALJ's duty in the first instance to evaluate the evidence, reach a reasoned and reasonable conclusion from that evidence, and to explain his evaluation of the evidence.  To overcome the ALJ's conclusion, a plaintiff must demonstrate that the record evidence cannot support the conclusion reached or compels a different conclusion.  Plaintiff has not done so here.  Plaintiff's argument the activities relied upon by the ALJ are not inconsistent with being off task 20% of the day, needing unscheduled breaks, or missing two days a month has a superficial appeal, but does not compel a different conclusion than reached by the ALJ.  This is perhaps best illustrated by looking at Plaintiff's ability to care for her special needs daughter.  Plaintiff cannot schedule the needs of her daughter, and the fact she is able to care for her daughter suggests she is not off task 20% percent of the time, does not require random, unscheduled breaks, and does not require time away from caring for her daughter two unscheduled days a month.  Even when the daughter is at school, if her needs require, Plaintiff must respond.  Plaintiff's argument the ALJ did not consider the limitations she expressed when carrying out her daily activities ignores the ALJ's discounting her allegations of disabling pain and the fact she did not allege error in that finding.

Plaintiff's appeal to this court's decision in Otte does not require a different decision.  In Otte, the issue was the frequency of the plaintiff's Ménière's disease attacks.

14

The record supported that the plaintiff had been let go from work in 2014 because of ten attacks in six months, five of which had occurred in the last four weeks. Otte, 2018 WL 5263515, at *4. In 2015 the plaintiff reported attacks monthly or every other month, she reported a "guesstimate" of three attacks in the three months before the hearing, and that "she sometimes has three attacks a week, or three a day." Id. This court recognized that Ménière's disease attacks are variable and concluded:

> Therefore, "inconsistencies" in Plaintiff's reports of symptoms alone do not justify disregarding those reports. The ALJ must explain specifically why he found that Plaintiff's Ménière's disease attacks will not cause her to miss work one to two days a month on an ongoing basis and are therefore not disabling. He has not done so, and he may not simply disregard Plaintiff's allegations because there are other inconsistencies with the evidence.

Id. at *5. Here, the issue is whether Plaintiff's pain is so severe as to cause her to be off task 20% or more of a workday on a consistent basis or so severe as to cause her to need unscheduled breaks or to miss two days of work a month on a consistent basis. As noted above, the ALJ found it is not so severe and the evidence supports that finding.

Plaintiff's argument the ALJ found the prior administrative medical findings of the state agency consultants unpersuasive and they are stale because of material changes in Plaintiff's medical condition and, therefore, do not constitute substantial evidence inconsistent with or detracting from Dr. Sankoorikal's opinion is without merit. Although the ALJ found the prior administrative medical findings "only partially persuasive" or had "little persuasiveness," he did not find them unpersuasive. (R. 22). Moreover, as summarized above, he specifically explained how the additional record evidence affected his findings regarding those medical findings and what portions of

those findings he accepted.  Further, although the ALJ did not specifically rely on those prior administrative medical findings to discount Dr. Sankoorikal's opinion, they, along with the record evidence relied upon in evaluating them, constitute record evidence supporting the ALJ's decision.

Plaintiff's argument the ALJ failed to provide reasons supported by substantial evidence demonstrating Dr. Sankoorikal's opinion is unpersuasive is also without merit. First, the ALJ did not find Dr. Sankoorikal's opinion unpersuasive, he found it "only partially persuasive" and explained the portions he found unpersuasive and why.  (R. 23). And, as noted above, his reasons are supported by substantial evidence.

Finally, Plaintiff's argument Dr. Sankoorikal's consideration of her reports of pain does not justify discounting his opinion because the record "contains significant objective findings documenting the basis for [Plaintiff]'s chronic pain" also fails.  (Reply 3).  None of the evidence cited by Plaintiff as documenting the basis for her chronic pain compels a finding that her pain is so severe as to need additional unscheduled breaks, to be off task 20% of a workday, or to cause her to be off work two days each month.  Moreover, all of the evidence cited by Plaintiff was considered by the ALJ in his evaluation of the severity of her impairments and of her pain, he explained his evaluation, and the record evidence supports his evaluation.  The ALJ considered the medical opinions and prior administrative medical findings in this case, including Dr. Sankoorikal's opinion, and explained his evaluation of those opinions.  The record evidence supports the ALJ's evaluation, and the court may not reweigh the evidence and substitute its judgment for that of the ALJ.

16

Finding no error as alleged by Plaintiff, the court affirms the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 30, 2021, at Kansas City, Kansas.

s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**